462 So.2d 178 (1985)
LOUISIANA STATE BAR ASSOCIATION
v.
Robert F. PITARD.
No. 80-B-2753.
Supreme Court of Louisiana.
January 14, 1985.
*179 Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Peé, Metairie, Roland J. Achee, Shreveport, Gerald F. Thomas, Natchetoches, for applicant.
Robert F. Pitard, New Orleans, for respondent.
Walter R. Fitzpatrick, Jr., New Orleans, Com'r.
CALOGERO, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Robert F. Pitard, a member of the bar of this State. The Committee's petition relies upon the authority of Section 8 of Article 15 of the Articles of Incorporation of the Louisiana State Bar Association and respondent's final convictions, after a bench trial in the Criminal District Court for the Parish of Orleans, of public bribery in violation of La.R.S. 14:118 and conspiracy to commit public bribery in violation of La.R.S. 14:26.
Harry DeKay, Jr. was the subject of a criminal investigation regarding alleged crimes against nature with three juveniles on different dates. With the threat of an impending grand jury indictment in one or more of the three cases, DeKay contacted a retired New Orleans police officer who solicited Pitard to handle a legal matter for DeKay. Without first contacting DeKay's retained criminal attorney, Mr. Irvin Dymond, Pitard became involved in a plan in which the family of each victim was to receive $5,000.00 in exchange for the exoneration *180 of DeKay. Pitard, with the assistance of two women, contacted the families of the boys involved and offered to "settle the case." On November 5, 1978 Mrs. D., the mother of a victim accepted a $5,000.00 check from Pitard in return for which she signed an affidavit which provided:
"I, T.D., acting individually and through my parent, C.D., court appointed Tutrix, hereby release Harry B. DeKay, Jr. and Prytania Private School from any responsibility or liability concerning any alleged actions of impropriety that were alleged to have happened during the year 1978. I also admit that any statements that I may have made regarding actions of impropriety by Harry B. DeKay, Jr. were false and misleading, and that Harry B. DeKay, Jr. is guilty of no wrongdoing to me whatsoever. This release is made for the sum of Five Thousand ($5,000.00) Dollars."
On November 29, 1978 Pitard and DeKay were charged with public bribery[1] and conspiracy to commit public bribery in that they offered to give, and did give, the sum of $5,000.00 to C. and T.D., persons about to be called as witnesses, with the intent to influence their conduct as witnesses in criminal proceedings before the Orleans Parish Grand Jury and at the trial of DeKay.
Following a bench trial and conviction of both defendants on both offenses, respondent Pitard, as well as DeKay, were sentenced to serve two years at hard labor for each offense, the sentences to run concurrently. The defendants were also fined $1,000.00 on the public bribery charge. The court suspended the jail term and placed defendants on five years active probation. This Court affirmed the conviction. State v. Harry DeKay, Jr. and Robert Pitard, 387 So.2d 570 (La.1980).
On November 26, 1980, the Committee filed a petition in this Court seeking disciplinary action against respondent under Article 15, Section 8 of the Articles of Incorporation of the Louisiana State Bar Association.[2] This Court, by its order of January 16, 1981 suspended Pitard from the practice of law, upon a finding that the crimes of which he had been convicted constituted "serious crimes", the necessary elements of which reflect upon his moral fitness to practice law.
After respondent's conviction became final, a Commissioner was appointed by this Court. On April 4, 1984, following a hearing on the matter, the Commissioner filed his report with this court. The Commissioner found that respondent's "grasp of the situation, as evidenced by his actions throughout, was so tenuous and uncertain, that he did not have the necessary appreciation of the gravity of what he was doing to have formed an intent to commit an immoral act." Accordingly, the Commissioner did not find Pitard's actions rendered him morally unfit to practice law.
The Commissioner found that his actions were so grossly negligent and careless that they reflected adversely upon his fitness to practice and that some disciplinary action was warranted. The Commissioner recommended that respondent not be disbarred, but that he be suspended from the practice of law for a period to be fixed by this court.
The Committee filed its "concurrence and opposition" to the Commissioner's report. The Committee concurred with the Commissioner's finding that respondent was convicted of serious crimes, felonies, which convictions became final when they were *181 affirmed by this court. The Committee also concurred with the Commissioner's finding that respondent acted incompetently, but they contend that this does not vitiate criminal intent. The Committee opposed the finding of the Commissioner that respondent was morally fit to practice; that respondent did not intend to commit an immoral act; and that respondent's lack of competency excused his actions.
The Committee contends that respondent's conviction of publicly bribing a potential witness adversely reflects upon his moral fitness to practice law. Further, they contend an aggravating circumstance is that the conduct constituting the crimes was directly connected with the practice of law. Thus, the Committee feels the appropriate discipline is disbarment, retroactive to January 16, 1981, the date of respondent's suspension.
The first question to be confronted is what evidence is to be considered by this Court.
In this regard, article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association provides as follows:
"At the hearing based upon the respondent's conviction of a crime the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime." (Emphasis added)
In addition, article 15, section 8, paragraph 7(c) states that "the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted."
This Court, in Louisiana State Bar Association v. Loridans, 338 So.2d 1338 (La. 1976), interpreting the above provisions, said that they "were clearly designed to put an end to an examination of respondent's guilt or innocence of the crime of which he has already been convicted and to permit only the introduction of mitigating circumstances that are not inconsistent with that guilt."
Respondent, testifying at the hearing, and in his brief arguing the merit of the Commissioner's findings, contends that his belief that he was settling a case, not bribing or conspiring to bribe, negates his intent to commit a crime. He claims that his brother in law, an assistant district attorney, advised him that paying, or offering restitution to, a victim was not a crime, whereas paying or offering to pay a witness was.[3] He maintains that his seeking such advice, securing it, and relying on it obviates proof of intent to bribe. This same argument was presented to the trial judge who convicted respondent.
One of the essential elements of public bribery as set forth in La.R.S. 14:118 is a conscious knowing intent to influence a person's conduct. State v. Duncan, 390 So.2d 859 (La.1980). In addition, one of the essential elements of the crime of conspiracy to violate a criminal law is specific intent. The issue of respondent's intent was addressed by this Court in affirming his conviction. This Court said, "although Pitard may not have thought his actions were criminal, both he and DeKay clearly intended to influence the conduct of potential witnesses." State v. DeKay, supra at 573.
To permit respondent to offer evidence tending to show his lack of knowledge and/or intent would be to admit evidence "inconsistent with the essential elements of the crime for which he was convicted" in direct contravention of the terms of Article 15, Section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association. Therefore, the *182 testimony, insofar as it seeks to negate any knowledge or intent on the part of respondent must be disregarded.
The foregoing does not preclude inquiry into the facts surrounding the commission of the crime. But, such inquiry is only to the extent the facts reflect upon the character or quality of the criminal conduct, or a respondent's degree of complicity therein. See Louisiana State Bar Association v. Edwards, 322 So.2d 123 (La.1975). The reference to "mitigating circumstances" in the Articles of Incorporation relates solely to circumstances which appropriately bear upon whether the crime warrants discipline, and, if so, the extent thereof. See Louisiana State Bar Association v. Loridans, 388 So.2d at 1345. This is the sole issue to be determined by this Court in a disciplinary action.
While respondent cannot introduce evidence inconsistent with the essential elements of the crime, he is allowed to show that the crime did not involve such misconduct or moral turpitude that he should be disbarred. No such showing has been made by respondent. Of the various persons involved in the conspiracy to commit public bribery, Pitard's involvement was perhaps of the shortest duration.[4] However that fact does not serve as any significant mitigation considering the gravity of the offense of which he was convicted. While Pitard might have rationalized the propriety of the matter by accepting, without analysis or application to the case at hand, the advice of his brother-in-law, there was damning evidence presented at trial which indicated at the least that Pitard developed serious misgivings at some point in time. The essentially uncontradicted testimony of the arresting officer was that following Pitard's arrest and Pitard's reading of the public bribery statute in the officer's presence, Pitard admitted "I'm guilty; you got me; I want to get out of this mess." Later, when asked by the officer why a practicing attorney with eleven years of experience would be involved in such a thing, respondent answered that it was a chance to make easy money.[5]
The conduct on which respondent's conviction was based is not only seriously criminal but also relates directly to his conduct as an attorney in the practice of law. Thus, we conclude that respondent has been convicted of a serious crime which reflects on his moral fitness to practice law and find that under the circumstances of this case disbarment is the appropriate disciplinary action. We concur with the Bar Association's recommendation of disbarment retroactive to the date of respondent's suspension.

Decree
For the reasons assigned, it is ordered, adjudged and decreed that Robert F. Pitard be and he is hereby disbarred from the practice of law on and after the date of his suspension by this Court. Respondent to bear all costs.
RESPONDENT DISBARRED; COSTS TO BE BORNE BY RESPONDENT.
MARCUS, J., dissents for reasons assigned by Justice Lemmon.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Respondent's evidence of inexperience in criminal matters and of consulting an assistant *183 district attorney before proceeding with the crime, although insufficient in the criminal case to defeat the guilty knowledge element of the crime of which he was convicted, established mitigating circumstances which bear on the question of penalty, especially when respondent's offense is compared to other cases of public bribery.[1] Accordingly, I would impose the lesser penalty of suspension.
NOTES
[1] La.R.S. 14:118 defines the crime of public bribery as follows:

Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
* * * * * *
(4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
[2] Article 15, Section 8 of the Articles of Incorporation of the Louisiana State Bar Association set forth the rules to be applied when respondent has been convicted of a crime.
[3] The thrust of the state's case in the bribery charge rested on the testimony of the assistant district attorney that Mrs. D., the recipient of the bribe and mother of one of the victims of the alleged crimes against nature was to be called as a witness in a case involving a different child to establish DeKay's knowledge, system and intent.
[4] He was introduced to DeKay on November 2, 1978 and was arrested on November 5, 1978 after giving the $5,000.00 check to Mrs. D.
[5] These incriminating admissions were recited in testimony by the arresting officer. Pitard testified that he did not make those statements. Pitard gave a different interpretation about his reaction and statements to the officer upon his reading the statutes. He alleges he responded," Well, you might be right. According to the statute, it looks like everything is there." Pitard also testified that, prior to his arrest and his reading of the public bribery statute, he did not know what "bribe" meant nor that the crime of public bribery existed. Originally Pitard even agreed to sign a confession because he "thought a confession was a statement of facts that happened." Later however, upon the advice of his attorney, he refused to sign the statement.
[1] The comparative circumstances of this crime probably motivated the sentencing judge to suspend respondent's sentence, since the public bribery of a witness in a criminal proceeding would usually warrant a period of confinement, even for the first offense.